# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2518 | **DATE** | 5/25/2000 |
| **CASE TITLE** | Applied Industrial vs. Mallinckrodt Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION.** Defendant's motion to dismiss or for judgment on the pleadings [11-1] is denied as to Counts I and III, and granted as to Count II. AIMCOR's motion for judgment on the pleadings as to Count II [13-1] is denied. All matters relating to the limited consent having been concluded, the case is returned to the assigned district court judge.

(11) ■ [For further detail see order attached to the original minute order.]

|  | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
|  | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 6 2000 | | |
|  | Notified counsel by telephone. | | date docketed | | |
|  | Docketing to mail notices. | | docketing deputy initials | | |
|  | Mail AO 450 form. | | 5/25/2000 | | |
| ✓ | Copy to judge/magistrate judge. | | date mailed notice | | |
| JJK | courtroom deputy's initials | | JJK | | |
|  | | Date/time received in central Clerk's Office | mailing deputy initials | | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

APPLIED INDUSTRIAL MATERIALS )
CORPORATION, )
)
Plaintiff, )
) No. 99 C 2518
v. )
) District Judge Guzman
MALLINCKRODT, INC., )
) Magistrate Judge Schenkier
Defendant. )

## MEMORANDUM OPINION

On October 31, 1986, Industry Holdings, Inc. ("Industry Holdings") and International

Minerals & Chemical Corporation entered into a Stock Purchase Agreement (the "Agreement"),

pursuant to which Industry Holdings purchased two entities: IMC Industry Group, Inc., and IMC

Group (Quartz) Inc. (collectively the "Purchased Companies"). Plaintiff in this case, Applied

Industrial Materials Corporation ("AIMCOR"), a Delaware corporation with its principal place of

business in Connecticut, is allegedly the successor to the rights and obligations of Industry Holdings

(Compl. ¶ 2). Defendant Mallinckrodt, Inc. ("Mallinckrodt"), a New York corporation, with its

principal place of business in Missouri, is the successor to the rights and obligations of International

Minerals & Chemical Corporation (Compl. ¶ 4; Answer ¶ 4). Consequently, for purposes of

convenience and clarity, this Opinion will refer to the Seller and the Purchased Companies

collectively as "Mallinckrodt," and the Purchaser as "AIMCOR."

The Agreement contains certain indemnification clauses, pursuant to which Mallinckrodt

agreed to indemnify and hold AIMCOR harmless under certain circumstances (Agreement Art.

VIII). This lawsuit presents a dispute concerning the nature and extent of Mallinckrodt's indemnification obligation under the Agreement.

AIMCOR alleges that Mallinckrodt is obligated to indemnify and/or defend AIMCOR when third parties bring suits against AIMCOR that allegedly arise out of "Excluded Liabilities," as defined in the Agreement (Compl. ¶ 16). AIMCOR alleges that it has been sued by many such plaintiffs and has provided a "partial list" of 17 suits, but has not disclosed how many other times it has been sued (Compl. ¶ 14 (Ex. B)). AIMCOR further alleges that Mallinckrodt has refused to indemnify and/or defend AIMCOR in some -- but not all -- of those 17 suits (Compl. ¶ 18). AIMCOR does not disclose in how many of the 17 suits this allegedly has happened, but presumably Mallinckrodt knows: Mallinckrodt does not say it lacks notice of what AIMCOR is alleging, but rather admits that it accepted the defense and/or indemnity in some suits but not others (Answer ¶ 18). Neither party has alleged in the pleadings the basis on which Mallinckrodt decided to defend and/or indemnify in some suits but not others.

In Count I, AIMCOR alleges that Mallinckrodt has breached the Agreement by failing to discharge its obligation to defend and indemnify AIMCOR in certain suits, and seeks damages in excess of $300,000 (Compl. ¶¶ 24, 26-29). In Count II, AIMCOR alleges that an "actual controversy" exists as to Mallinckrodt's obligations to defend and indemnify as to future lawsuits, and seeks a declaratory judgment requiring Mallinckrodt to defend and indemnify AIMCOR in all personal-injury lawsuits which claim damages allegedly caused by products sold and delivered by Mallinckrodt prior to June 30, 1986 (Compl. ¶¶ 30-32; *see also* Pl.'s Response to Mallinckrodt's Motion to Dismiss or Alternatively for Judgment on the Pleadings ("Pl.'s Resp.") at 15). In Count III, AIMCOR seeks recovery of the fees and costs incurred as a result of bringing the instant action (Compl. ¶¶ 33-35). Mallinckrodt has moved to dismiss the complaint pursuant to FED. R. CIV. P.

12(b)(6) or, in the alternative, for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) (doc. # 11-1). AIMCOR argues that Mallinckrodt is not entitled either to dismissal or a judgment on the pleadings; AIMCOR asserts that, instead, AIMCOR should receive judgment on the pleadings in its favor on Count II, seeking declaratory relief (doc. #13-1). For the reasons set forth below, Mallinckrodt's motion is denied as to Counts I and III, and is granted as to Count II; AIMCOR's corresponding motion for judgment on the pleadings as to Count II is denied.[1]

## I.

The purpose of a motion to dismiss under FED. R. CIV. P. 12(b)(6) is to test the sufficiency of the complaint, and not to decide the case on the merits. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). On a motion to dismiss, a court must construe the allegations of the complaint in the light most favorable to the non-moving party; all well-pleaded facts and allegations must be taken as true. *See Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir. 1993). While the complaint must allege facts sufficient to establish the essential elements of the cause of action, *see Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992), a court should not dismiss the complaint "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). These same standards govern the Court's consideration of a motion for judgment on the pleadings under FED. R. CIV. P. 12(c). *See, e.g., Hentosh v. Herman M. Finch Univ. Health Sciences,*

---

[1]On January 13, 2000 the parties consented, pursuant to 28 U.S.C. § 636(c) and Northern District of Illinois Local Rule 73.1(c), for this Court to enter a ruling on these dispositive motions (*see* doc. ## 23-1, 24-1). This "limited consent" procedure has been upheld by the Seventh Circuit. *See Hain v. Washington,* 131 F.3d 1248, 1249 (7th Cir. 1997).

167 F.3d 1170, 1173 (7th Cir. 1999); *Northern Indiana Gun & Outdoor Shows, Inc. v. South Bend,* 163 F.3d 449, 452 and n.3 (7th Cir. 1998).[2]

## II.

We begin with Mallinckrodt's motion to dismiss or for judgment the pleadings as to Count I, in which AIMCOR alleges breach of contract stemming from Mallinckrodt's failure to defend and/or indemnify in certain personal-injury cases brought by others against AIMCOR. The parties have cited only Illinois case law on the contract question, which is understandable given that the parties agreed that Illinois law would govern issues concerning the "validity, enforcement, interpretation, construction [and] effect" of the Agreement (*see* Agreement Art. 9.11). In light of this choice of law provision, and the failure of any party to suggest that Illinois law would conflict with some other potentially applicable law, *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993), this Court will apply Illinois law.

Under Illinois law, AIMCOR must plead each of the following elements to allege a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting injury to the plaintiff. *See Gallagher Corp. v. Russ*, 721 N.E.2d 605, 611 (Ill. App. Ct. 1st Dist. 1999); *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 811 (Ill. App. Ct. 1st Dist. 1998). The complaint clearly alleges the existence of a contract, performance by AIMCOR, and damages resulting from the breach, *see* Compl. ¶¶ 26-29, and Mallinckrodt does not argue otherwise. The focus of Mallinckrodt's attack is instead on AIMCOR's allegation of breach. Because this attack turns on the parties' differing

---

[2]This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are diverse (*see* Compl. ¶¶ 2-3, Answer ¶¶ 2-3), and the amount in controversy admittedly exceeds $75,000 (*see* Compl. ¶ 5, Answer ¶ 5). Moreover, the defendant does not contest the exercise of personal jurisdiction or venue. Thus, this Court need not address these issues.

interpretations of what the Agreement requires Mallinckrodt to do (and when), we begin by setting out the relevant contract language.

## A.

Article VIII of the Agreement, entitled "Indemnification," sets forth the parameters of the parties' respective duties to defend and indemnify each other under various circumstances. With respect to personal injury claims asserted against AIMCOR by third parties, Mallinckrodt's indemnification and defense obligations are set forth in several different subparts of Article VIII.

Article 8.2 of the Agreement provides in relevant part as follows (emphasis added):

> [Mallinckrodt] shall indemnify, save and keep [AIMCOR] harmless against and from all liability, demands, claims, actions or causes of action, assessments, losses, penalties, costs, damages or expenses, including reasonable attorneys' ... fees, sustained or incurred by [AIMCOR] ... as a result of:
> ....
> (c) the existence of ... *or the assertion against [AIMCOR]* ... of, any Excluded Liabilities (as herein defined ).

Article 8.6 of the Agreement sets forth a list of "Excluded Liabilities." Of particular significance here is Article 8.6(e), which identifies one category of Excluded Liabilities as "any liabilities for injury to ... persons ... which do not constitute Permitted Liabilities described in Section 8.5(c)." "Permitted Liabilities," in turn, are defined as "all liabilities, including claims for consequential damages, for injury to ... persons ... occurring after the Balance Sheet Date [of June 30, 1986] (excluding any such liabilities which arose out of the sale and delivery by [Mallinckrodt] ... of any product on or prior to the Balance Sheet Date"). Agreement Art. 8.5(c).

Finally, Article 8.8 sets forth the procedure for AIMCOR to claim indemnity, and how Mallinckrodt is to respond (emphasis added):

> An Indemnified Party [AIMCOR] shall give an Indemnifying Party [Mallinckrodt] prompt written notice of any claim by a third party ("Third Party Claim") *that has given or could give rise to a right of indemnification*

5

*under this Article VIII,* including any inquiry or investigation which the Indemnified Party believes may involve or expects will lead to such a claim. The failure of an Indemnified Party to give such notice shall not affect its right of indemnification, except to the extent the failure to give such a notice has resulted in an increase in the indemnification obligation of the Indemnifying Party. *The Indemnifying Party shall have the responsibility of contesting, defending, litigating, settling or satisfying any Third Party Claim* and shall have the right to employ its own counsel in connection therewith, *provided that the Indemnifying Party has proceeded diligently and in good faith. The Indemnifying Party shall have full control over any actions (including without limitation any negotiation or litigation) in connection with any such claim;* provided however, that the Indemnifying Party shall not settle any Third Party Claim without the consent of the Indemnified Party, but if the Indemnified Party shall refuse to consent to any settlement recommended by the Indemnifying Party and shall elect to contest the Third Party Claim, then the Indemnifying Party's liability for the Third Party Claim shall not exceed the amount for which the Third Party Claim could have been settled plus expenses incurred by the Indemnified Party up to the date of such refusal. The Indemnified Party shall also have the right to be represented by separate counsel at the Indemnified Party's expense in connection with any such claim. The Indemnified Party shall make available to the Indemnifying Party or its representatives all information, records and other materials in the possession of the Indemnified Party which are reasonably required by the Indemnifying Party for its use in connection with any such claim and shall otherwise cooperate with and assist the Indemnifying Party in connection with such claim (including providing testimony in connection with any litigation). *In the event the Indemnifying Party fails to proceed diligently and in good faith with respect to such claim, the Indemnified Party may take such course of action as it deems appropriate without prejudice to its rights to indemnity.*

Agreement ¶ 8.8.[3]

AIMCOR alleges that Mallinckrodt breached its obligations under these sections of the

Agreement by wrongfully refusing to defend and/or indemnify AIMCOR for certain lawsuits that

AIMCOR claims arose from the alleged sale and delivery of products by Mallinckrodt on or before

the balance sheet date of June 30, 1986. *See* Compl. ¶¶ 14-18, 26-29. In response, Mallinckrodt

---

[3]Mallinckrodt also has directed the Court's attention to Article 6.7, which defines the terms "Indemnified" and "Indemnifying Party." However, we do not assign significance to Article 6.7 for purposes of this motion, as it does not purport to define what creates a claim subject to defense or indemnity for purposes of Articles 8.2(a) and 8.8.

offers two arguments in support of its contention that AIMCOR has failed to adequately plead that Mallinckrodt had any obligation of defense or indemnity for those suits. *First*, Mallinckrodt argues that AIMCOR has not adequately pled that the third-party suits involved claims that allegedly arose from products "sold *and* delivered" on or before June 30, 1986 (Mallinckrodt Mem. In Support of Its Motion to Dismiss or Alternatively for Judgment on the Pleadings ("Def.'s Mem.") at 4-5). *Second*, Mallinckrodt argues that under the Agreement, Mallinckrodt has no indemnification or defense duties based on mere *allegations* in third-party complaints that persons were injured by products sold and delivered by Mallinckrodt on or before June 30, 1986. Mallinckrodt asserts that it has no such duties unless it is first established that such sales and deliveries *actually* occurred (Def.'s Mem. at 1-2). We address each argument in turn.

## B.

Mallinckrodt's first argument is unpersuasive. We agree with Mallinckrodt that some paragraphs of the complaint imply that Mallinckrodt's duty to indemnify and/or defend could arise from a sale *or* delivery in the disjunctive (as opposed to a sale *and* delivery in the conjunctive, which is the phrasing the Agreement uses in defining Excluded Liabilities). But the complaint clearly and specifically alleges that Mallinckrodt breached its obligation by failing to indemnify and/or defend lawsuits arising from Excluded Liabilities "as that term is defined and used in the [Agreement]" (Compl. ¶ 15). And it is equally clear that the Agreement, which is made part of the complaint (Compl.¶ 12, and Ex. A), defines Excluded Liabilities to apply to the sale *and* delivery of products by Mallinckrodt on or before June 30, 1986. Moreover, AIMCOR elsewhere acknowledges that Excluded Liabilities require both a sale and a delivery (*see* Pl.'s Mem. at 15); and, for its part, Mallinckrodt admits that it understands AIMCOR has "pled in its complaint" that AIMCOR seeks indemnity for suits alleging injuries resulting from the "sale and delivery" of certain Mallinckrodt

7

products (Def.'s Reply Mem. at 13). Despite AIMCOR's lack of precision in pleading, under the liberal rules of notice pleading that govern, AIMCOR's allegations of sale and delivery are sufficient to survive a motion to dismiss.

**C.**

Mallinckrodt's second argument presents a question of interpretation of the Agreement as it pertains to Mallinckrodt's indemnity and defense obligations: are those obligations triggered by *allegations* in the third-party complaints that products sold and delivered before June 30, 1986 were involved (as plaintiff alleges); or only when it is *established* there were such actual sales and deliveries (as defendant says); or somewhere in between? In answering this question, we begin with a review of the governing Illinois legal principles of interpretation that guide our analysis.

Under Illinois law, the fundamental principle of contract interpretation is to give effect to the intent of the parties, which is determined by examining the language of the contract. *See LaSalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996); *Lewis X. Cohen Ins. Trust v. Stern,* 696 N.E.2d 743, 751 (Ill. App. Ct. 1st Dist. 1998). Indemnity contracts are to be construed in the same manner as any other contract. *See, e.g., Scott Stainless Steel, Inc. v. NBD Chicago Bank,* 625 N.E.2d 293, 297-98 (Ill. App. Ct. 1st Dist. 1993). In construing a contract, Illinois courts look to the entire agreement, and give effect -- to the extent possible -- to each provision. *See, e.g., Bourke v. Dun & Bradstreet Corp.,* 159 F.3d 1032, 1038 (7th Cir. 1998). Absent explicit language to the contrary, the terms and phrases contained in the contract will be given "their ordinary and natural meaning." *See LaSalle National Trust,* 76 F.3d at 144; *Lewis X. Cohen,* 696 N.E.2d at 751.

Although it is sometimes said that indemnity clauses are disfavored and must be "strictly construed," *see, e.g., Ervin v. Sears, Roebuck and Co.,* 469 N.E.2d 243, 249 (Ill. App. 1st Dist. 1984), that canon of interpretation is itself limited by two considerations. *First,* the "strict

8

construction" rule does not come into play if a contract clearly provides for indemnification or defense, because a court "may not strictly construe an indemnity contract if such construction conflicts with the intent of the parties." *Hanley v. Balbo Co.,* No. 96 C 4972, 1998 WL 673647, at *1 (N.D. Ill. Sept. 16, 1998); *Shah v. Atlantic Richfield Co.,* No. 85 C 9129, 1987 WL 6305, at *4 (N.D. Ill. Feb. 5, 1987). *Second,* as will be explained more fully below, the "strict construction" rule applies only where the indemnification is designed to protect one from his or her own negligence or conduct. *Hanley,* 1998 WL 673647, at *1; *Universal Bonding Ins. Co. v. Esko & Young, Inc.,* No. 90 C 02995, 1991 WL 30049, at *4 n.3 (N.D. Ill. Feb. 28, 1991).

In Article 8.2 of the Agreement, Mallinckrodt broadly agreed to indemnify AIMCOR not only from all "demands and claims" (including attorney's fees) resulting not only from the *existence,* but also the *assertion* of any Excluded Liabilities. Agreement Art. 8.2(c) (emphasis added). The Agreement does not give a special definition to the words "claims," "demands" or "assertion," and so we give them their common meaning. *See, e.g., LaSalle National Trust,* 76 F.3d at 144. A "demand" is commonly defined as the "assertion of a legal right." BLACK'S LAW DICTIONARY 429 (6th ed. 199). "Claim" is similarly defined: "To demand as one's own or as one's right; to assert; to urge; to insist. A cause of action." *Id.* at 247. "Assert," in turn, is commonly defined not as to *prove,* but rather as "[t]o state as true; declare; maintain." *Id.* at 116.

The definition of Excluded Liabilities (which requires Articles 8.6(e) and 8.5(c) to be read together) covers personal injury and property damage "liabilities" arising out of sales and deliveries by Mallinckrodt on or before June 30, 1986. Thus, to be an Excluded Liability, it must be a *liability* (not merely a claim) that arises from a qualifying sale and delivery. *See* Agreement ¶¶ 8.5(c), 8.6(e). But Article 8.2(c) says that Mallinckrodt will indemnify against both existing *and* asserted Excluded Liabilities. *See* Agreement ¶ 8.2(c). That is difficult to square with Mallinckrodt's argument that

9

Mallinckrodt can never have a defense or indemnification duty unless it is first established (and not merely alleged) that AIMCOR's liability came from a qualifying sale and delivery.

Article 8.8 further undermines Mallinckrodt's argument. Article 8.8 provides that Mallinckrodt "shall" have the duty to defend any third-party claim that "has given or *could* give rise to a right of indemnification." Agreement Art. 8.8 (emphasis added). Article 8.8 goes on to specify that Mallinckrodt not only has the right, but the "*responsibility* of contesting, defending, litigating, settling or satisfying" such third-party claims. *Id.* (emphasis added). Article 8.8 then goes on to specify in some detail Mallinckrodt's right to control, litigate and settle third-party claims, and imposes a duty on Mallinckrodt "to proceed diligently and in good faith with respect to such claim[s]." *Id.*

Reading these provisions of Article 8 together, as the Court is required to do, leads to the conclusion that the agreement imposes upon Mallinckrodt a duty of defense based on the "*assertion. . .* of, any Excluded Liabilities." *See* Agreement Art. 8.2(c). Article 8.8 of the Agreement further confirms this point, as it provides for Mallinckrodt to undertake a defense for claims that "could give rise" to a right of indemnification. *See* Agreement Art. 8.8. Indeed, the language and structure of Article 8.8 contemplates that Mallinckrodt will not merely reimburse defense costs incurred by AIMCOR after a claim has been proven to arise out of an Excluded Liability, but will defend a case prior to it being established that there is actual Excluded Liability, so long as the claim "could give rise" to an Excluded Liability.

The same language in Article 8.8, however, does not rest comfortably with what appears to be AIMCOR's claim: that is, that the mere assertion of an Excluded Liability invariably triggers Mallinckrodt's indemnity (as opposed to defense) obligations. Article 8.8 speaks of a third-party claim that "has given" or "could give" rise to a right of indemnification. That disjunctive phrasing

indicates that not every third-party claim in which there is a defense obligation will invariably give rise to an obligation to indemnify a judgment or settlement that AIMCOR might have to pay on that claim. That conclusion is fortified by reference to the definition of Excluded Liabilities as "liabilities," and not merely alleged liabilities. *See* Agreement Art. 8.6. Thus, as explained further below, under the applicable provisions of the Agreement, Mallinckrodt must defend where the third-party claim could give rise to an Excluded Liability. Moreover, Mallinckrodt in some instances must indemnify AIMCOR for judgments or settlements of third-party claims which could give rise to an Excluded Liability. But the Agreement does not support the proposition that Mallinckrodt must *always* pay judgments or settlements that third-parties might obtain against AIMCOR, where it turns out that the products involved were not sold and delivered by Mallinckrodt on or before June 30, 1986.

### D.

Relying primarily on *Ervin v. Sears, Roebuck and Co.*, Mallinckrodt argues that it is not required to defend or indemnify AIMCOR for third-party lawsuits when such lawsuits merely allege sales and deliveries of products. *See, e.g.,* Def.'s Mem. at 12. Rather, Mallinckrodt argues that because it is not an insurer, Mallinckrodt is entitled to "'look behind' the complaints and 'investigate the truth of those allegations,' especially where Mallinckrodt's years of experience in litigation concerning [these types of claims], reveals that plaintiffs' attorneys frequently file cases against scores of defendants without first obtaining evidence of product sales or exposure." *Id.* (quoting *Ervin*, 469 N.E.2d at 249-50). Because Mallinckrodt's argument essentially turns on *Ervin*, we turn to a consideration of that case.

In *Ervin*, the plaintiff sued Sears after underwear allegedly purchased at Sears, but manufactured by Flagg-Utica Corporation ("Flagg"), burst into flames and injured him while he was

working as a welder. *See Ervin*, 469 N.E.2d at 246-47. Sears filed a third-party action against Flagg, alleging that Flagg had breached its obligation to defend the underlying suit, and seeking reimbursement of the attorney's fees and costs Sears incurred in defending the underlying suit. *See id.* at 247. The jury in the underlying suit returned a verdict in favor of Sears; Sears then sought and obtained summary judgment in its action against Flagg. *See id.*

Flagg's contract with Sears obligated it to "defend, hold harmless and indemnify [Sears] from and against ... any and all liability and expenses ... arising out of any alleged or claimed defect" in the underwear it sold to Sears for resale. *Ervin*, 469 N.E.2d at 246. On appeal, Sears argued that this provision "obligated Flagg to defend Sears in suits involving Flagg's products," and that under principles of insurance law, the triggering of a duty to defend would be based on the allegations of the complaint against Sears. *Id.* at 249. The appellate court agreed that this provision "obligated Flagg to defend Sears in suits involving Flagg's products," and that if insurance law principles applied, the triggering of that defense obligation would turn on the allegations of the complaint against Sears. *Id.*

However, the appellate court rejected Sears' attempts to analogize Flagg's duties with that of an insurer. *See id.* The court explained that the defense obligation under an insurance contract is a "fundamental obligation []" undertaken by the insurer, which is in the "unique position" of being a "professional seller" of protection against loss. *Id.* at 249-50. By contrast, an entity like Flagg is not a "professional seller" of such loss protection, and the agreement to defend in a sales contract such as that between Sears and Flagg is "incidental to the main purpose" of that agreement. *Id.* at 249. Thus, the appellate court concluded that it was appropriate to allow Flagg "a greater degree of freedom" than an insurer enjoys, to permit Flagg to investigate the allegations of the complaint "for the purpose of determining" whether its contractual obligations have been triggered. *Id.* at 250.

12

The *Ervin* court also concluded that the provision in the Sears/Flagg agreement should be interpreted under principles governing indemnities, and reasoned that indemnity agreements are disfavored under Illinois law and must be "strictly construed." *Id.* at 249. Construing the indemnity clause in the Sears/Flagg agreement strictly, the appellate court held that "while the law expressly prohibits those in the business of insurance from refusing to defend based on what they have discovered from 'looking behind' the subject complaint, no such restriction is imposed on a business which, as part of its agreement with a purchaser of its products, agrees to defend and/or indemnify that customer in suits involving those products." *Id.*

Because the lower court had not determined whether Flagg had sold the underwear, the appellate court held that summary judgment against Flagg was improper. *Id.* at 250. At the same time, the Court held that there was a question of fact for trial as to whether Flagg breached its defense duty to Sears: "[i]f Flagg made the underwear worn by *Ervin*, it breached its duty to defend Sears; if it did not make the underwear, it breached no duty." *Id.*

*Ervin* is the sole Illinois state-court authority cited to this Court, and has not itself been relied on in later Illinois state court decisions. However, we note that one judge in this district has applied *Ervin* in two cases. *See Sears, Roebuck & Co. v. Savoy Reinsurance Co., Ltd.,* No. 90 C 1202, 1991 WL 22501, at *4 (N.D. Ill. Feb. 15, 1991); *Sears, Roebuck and Co. v. Fuqua Insurance Co., Ltd.,* No. 89 C 9418, 1990 WL 251744, at * 5 n.5 (N.D. Ill. Dec. 19, 1990). Moreover, the Court is mindful that "[w]here the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Allen v. Transamerica Ins. Co.,* 128 F.3d 462, 466 (7th Cir. 1997); *see also Fuqua,* 1990 WL 251744, at *5 n.5 ("On matters of Illinois law and absent an Illinois Supreme Court decision on the issue, a decision by the Illinois Appellate Court is to be followed

absent 'persuasive data' or other 'good reason to believe' that the Illinois Supreme Court would reach a contrary conclusion").

We believe that to the extent that *Ervin* draws a distinction between insurance contracts and indemnification agreements between private parties, and declines to import wholesale the principles governing the former into the latter, there is no persuasive reason to believe the Illinois Supreme Court would disagree. *Ervin's* distinction between the different fundamental purposes underlying each type of agreement is a defensible one. That distinction leads to what we view as the essential holding in *Ervin*: that in determining whether a duty to defend has been triggered in a private indemnity agreement between noninsurers, the party providing the indemnity will not be limited to the allegations in a third-party complaint, but will be allowed to look behind the allegations of third-party complaints "for the purpose of determining what its contractual obligations. . . in fact are." *See id.* at 249-50. That is a holding that, under *Allen*, we must and do follow.

However, to the extent that *Ervin* states that any and all indemnity contracts must be strictly construed, we conclude that *Ervin* is not in step with the Illinois law. The canon of strict construction does not apply to all indemnity agreements, but only to indemnity agreements under which a party is indemnified against its own negligence or conduct:

> The "well-established' principle that "indemnity contracts or provisions are to be strictly construed against the indemnitee," applies in the main to agreements that indemnify a party against liability from its own actions or negligence. These kind of indemnity contracts are, in fact, disfavored, and are thus "strictly construed against a party seeking indemnity." By contrast, the Agreement at issue in this litigation is not designed to indemnify [the plaintiff] for its own negligence, but rather for any loss caused by [the defendant's] default.

*Universal Bonding*, 1991 WL 30049, at * 4 n.3 (citations omitted); *see also Burns v. Ford Motor Co.*, 331 N.E.2d 325, 331 (Ill. App. Ct. 1st Dist. 1974).

14

Illinois case law teaches that "[t]he purpose of this rule of strict construction ... [is] to insure that one agreeing to the extraordinary liability of indemnifying another against his own negligence [is] fully aware of the extent of his liability." *Duffy v. Poulos Bros. Constr. Co.,* 587 N.E.2d 1038, 1041 (Ill. App. Ct. 1st Dist. 1991); *cf. Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp.,* 70 N.E.2d 604, 607 (Ill. 1947). Since there is nothing "extraordinary" about a party being indemnified against the negligence or conduct of another, as was the case in *Ervin* (and in this case), the rationale underlying the "strict construction" rule is not implicated. Thus, when a contract does not seek to indemnify a party against its own conduct or negligence, "'indemnity agreements must be construed as any other contract and the dominant rule of construction is to determine the intention of the parties.'" *Universal Bonding Ins. Co.,* 1991 WL 30049, at *4 (quoting *Plepel v. Nied,* 435 N.E.2d 1169, 1176 (Ill. App. Ct. 1st Dist.1982)); *see also Hanley,* 1998 WL 673647, at *1.

That important distinction was never acknowledged in *Ervin.* Indeed, *Ervin*'s broad statement that *all* indemnity contracts are to be strictly construed, *see Ervin,* 469 N.E.2d at 249, appears to be derived from *Bates v. Select City Theatre Operating Co., Inc.,* 397 N.E.2d 75, 77 (Ill. App. Ct. 1st Dist. 1979), a case in which the third-party plaintiff was seeking indemnity for its own negligence. The Court finds that the foregoing case law provides "persuasive indication" that the Illinois Supreme Court would not follow *Ervin* to the extent it mandates a strict construction of all indemnity agreements. This Court holds that *Ervin*'s application of the "strict-construction" rule is not applicable when, as here, the indemnity agreement does not purport to indemnify a party for his or her own conduct or negligence.

Read in this fashion, *Ervin* does not fully resolve the issue before this Court, namely, whether Mallinckrodt can simply refuse to defend and/or indemnify until it is proven that, in fact, third parties suing AIMCOR allege injuries by products *actually* sold and delivered by Mallinckrodt on

15

or before June 30, 1986. To begin with, *Ervin* did not address the duty to indemnify a settlement or judgment since, in that case, Sears prevailed on the third-party claim; thus, the only question presented in *Ervin* was Flagg's duty, *vel non*, to have provided Sears with a defense for that suit. But assuming that *Ervin's* analysis applies equally to defense and indemnity (which is a reasonable assumption), *Ervin* only stands for the proposition that unless the private indemnity agreement specifically states otherwise, a defendant like Mallinckrodt (who is not an insurer) is "entitled" or "allowed" to go behind the face of the pleadings to investigate the third-party claims, to see if it is required to defend. *Id.* at 250.[4] *Ervin* did not hold that a defendant in Mallinckrodt's position may flatly refuse to defend or indemnify when confronted with allegations in a complaint that could give rise to Excluded Liability, without actually exercising its right to "look behind" the bare allegations.

This Court does not believe that *Ervin* can be stretched to allow a defendant to decline a defense or indemnity, even if it has no information upon which to base a denial. *See Ervin*, 469 N.E.2d at 250 (explaining that the purpose of giving Flagg "a greater degree of freedom" to look behind the pleadings was to allow Flagg to determine "what its contractual obligations. . . in fact are"). In *Ervin*, Flagg in fact had reason to question whether Flagg had supplied the offending product. *Id.* at 247. *See also Savoy*, 1991 WL 22501, at *5 and n.5 (noting that "if there was *evidence* of a defect in the bicycle as designed or manufactured [by the third-party defendant], then Sears would be entitled to partial or full indemnity .... [and that] [e]ven if liability was ultimately based only on actions of Sears, [the third-party defendant] would have had a duty to defend to the

---

[4] Neither the agreement in *Ervin* nor the Agreement in this case specifically states that the duty to defend or indemnify must be asserted solely from the face of the third-party complaint. *Ervin* made it clear that in the absence of the specific interest of the parties to do so, private indemnity agreements will not be construed to bar the indemnifying party from looking outside the pleadings to determine if a defense or indemnity obligation has been triggered. However, we do not read *Ervin* for the proposition that private parties are prohibited from contracting for that result, if they so choose. To do otherwise would place *Ervin* into conflict with the rule that a "strict construction" of indemnity agreements may not be used to avoid giving effect to the intent of the parties. *Hanley*, 1998 WL 673647, at *1.

extent that *substantial claims* of a design or construction defect were present in the case") (emphasis added). This Court finds that *Ervin* allows a defendant in Mallinckrodt's position to refuse to indemnify and/or defend only if it has a good faith basis to assert that it will not be obligated to defend or indemnify a plaintiff in AIMCOR's position under the indemnity contract. *Ervin* does not authorize a defendant to refuse to defend or indemnify a claim that the pleadings indicate might give rise to an Excluded Liability without having a factual basis for that refusal.

In addition, the Court observes that even apart from *Ervin,* the Agreement in this case independently indicates that Mallinckrodt must investigate such third-party complaints when it is informed that they exist. *See, e.g.*, Agreement Art. 8.8 ("In the event that [Mallinckrodt] fails to proceed *diligently and in good faith* with respect to [third-party claims], [AIMCOR] may take such course of action as it deems appropriate without prejudice to its rights to indemnity") (emphasis added). The Court does not believe that Mallinckrodt would be acting "diligently and in good faith" under the Agreement if it flatly denied a defense for a third-party claim that on its face could give rise to an Excluded Liability, without having a good faith basis for doing so.

Therefore, since the Agreement does not attempt to indemnify AIMCOR against its own negligence or conduct, it will not be strictly construed against AIMCOR. The Court concludes that the Agreement, fairly read and interpreted in light of *Ervin*, requires Mallinckrodt to defend and/or indemnify AIMCOR against third-party complaints that on their face could give rise to Excluded Liability, unless and until Mallinckrodt has a good faith basis for believing that third-party claims could not give rise to a right of indemnification under the Agreement.[5]

---

[5] In declining to import insurance law principles in determining whether a private party duty to defend has been triggered or breached, we believe the *Ervin* court also intended to reject application of the rather draconian consequences that result under Illinois insurance law from a breach of that duty. *See, e.g., Thornton v.* Paul, 384 N.E.2d 335, 340 (Ill. S.Ct. 1978) ("stating the general rule that a major effect of the insurer's wrongful failure to defend is to estop the insurer from later raising policy defenses or noncoverage in a subsequent action by the insured. . . ."); *Elas v. State Farm*

**E.**

At this stage of the proceedings, all that we know is that Mallinckrodt refused to defend and/or indemnify AIMCOR in connection with certain -- but not all -- suits that AIMCOR claims are alleged to arise out of Excluded Liabilities. The pleadings do not disclose what allegations or other information in the third-party suits against AIMCOR indicate that Excluded Liabilities might be involved. Nor do the pleadings reveal the basis for Mallinckrodt's refusals to defend and indemnify, or facts sufficient to ascertain whether the refusals were consistent with Mallinckrodt's obligations under the Agreement. While we can say that under the Agreement Mallinckrodt must defend and indemnify claims that could arise out of Excluded Liabilities unless it has a good faith basis for believing the products involved were not sold and delivered by Mallinckrodt on or before June 30, 1986, neither the Agreement nor the *Ervin* decision spells out what is sufficient to provide Mallinckrodt with such a good faith basis.

We expect that the parties will illuminate these (and other potentially relevant matters) through discovery. However, we cannot now say that based on the pleadings, it appears "beyond a doubt" AIMCOR can prove "no set of facts" which would entitle it to relief. *Conley*, 355 U.S. at 45-46. Accordingly, the Court denies Mallinckrodt's motions to dismiss or for judgment on the pleadings as to Counts I and III.

---

*Co.*, 352 N.Ed.2d 60, 62 (Ill. App. Ct. 3d Dist. 1976) (same); *Reis v. Aetna Cas. & Surety Co.*, 387 N.E.2d 700, 705 (Ill. App. Ct. 1st Dist. 1978)(same). That does not mean, of course, that a party like AIMCOR is without a remedy if there is a proven breach. The Seventh Circuit has held that breach of an indemnity to pay legal expenses can result not only in recovery of those expenses, but also recovery of prejudgment interest. *See Medcon Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 519 (7th Cir. 1999) ("The way to make the prevailing party whole is to provide prejudgment interest at the market rate").

## III.

Since Court I survives, so does Count III. Count III seeks recovery under the Agreement of the cost of AIMCOR brining this suit for the alleged breach of the duties to defend and indemnity. If AIMCOR recovers on Count I, it will be entitled to seek its fees and costs of this suit under Article 8.2(b) of the Agreement. At this stage, the Court cannot say AIMCOR has no chance of prevailing on any claims in Count I, or on its related request for fees and costs in Count II. As a result, Mallinckrodt's motion to dismiss or for judgment on the pleadings is also denied as to Count III.

## IV.

AIMCOR argues that Count II for declaratory judgment is properly before this Court because AIMCOR believes that it will sued in the future by third-parties, and that these suits will trigger Mallinckrodt's duty to defend and/or indemnify as to those lawsuits. These allegations fail to establish the existence of an actual case or controversy.

"[I]n a declaratory judgment action, subject matter jurisdiction must exist ... at the time the case is filed." *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 872 (N.D. Ill. 1999). Subject matter jurisdiction is only proper if the claim presents an actual case or controversy. *Id.* Whether the claim presents an actual case or controversy can be a difficult question, because

> [t]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree ... [but] [b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 873 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

However, the claim is not justiciable if it involves "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

AIMCOR seeks declaratory relief on just such contingencies. For example, "AIMCOR *anticipates* that it will continue to be sued by plaintiffs claiming damages as a result of products allegedly sold by [Mallinckrodt]." (Compl. ¶ 23) (emphasis added). Moreover, AIMCOR admits that Mallinckrodt has in the past fulfilled its contractual obligations to defend and indemnify certain suits (*see* Compl. ¶ 18). Thus, even if the Court could be certain that AIMCOR would indeed be sued in the future, the complaint does not even allege that Mallinckrodt would breach its obligations as to those suits. Under these circumstances, AIMCOR has failed to allege that a justiciable controversy exists. *See also Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1189 (7th Cir. 1980); *Clark Equip. Co. v. Greyhound Corp.*, No. 90 C 524, 1990 WL 70517, at *2 (N.D. Ill. May 11, 1990) ("[P]laintiff appears to seek a declaration that defendant is obligated to defend and indemnify it against both pending and future lawsuits. If it is necessary to issue a declaratory judgment we would lack both the inclination and the authority to issue a judgment with respect to defendant's obligations to defend actions which are merely anticipated and not yet pending").

Accordingly, Mallinckrodt's motion to dismiss Count II for lack of subject matter jurisdiction is granted pursuant to FED. R. CIV. P. 12(b)(1) and 12(h)(3); AIMCOR's request for a judgment on the pleadings as to Count II is denied.

## IV.

For the reasons set forth above, Mallinckrodt's motion to dismiss or for judgment on the pleadings (doc. # 11-1) is denied as to Counts I and III, and granted as to Count II. AIMCOR's motion for judgment on the pleadings as to Count II (doc. # 13-1) is denied.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**Dated: May 25, 2000**