# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 2518 | DATE | 3/28/2003 |
| CASE TITLE | Applied Industrial Materials Corp. vs. Mallinckrodt, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment is Granted and Defendant's cross-motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | MAR 28 2003 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |
| TBK | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 68

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| APPLIED INDUSTRIAL MATERIALS CORPORATION, | ) ) ) | MAR 2 8 2003 |
|---|---|---|
| Plaintiff, | ) ) ) | No. 99 C 2518 |
| v. | ) ) | District Judge Guzman |
| MALLINCKRODT, INC., | ) ) | |
| Defendant. | ) | |

This is a breach of contract action by Applied Industrial Materials Corporation ("AIMCOR") against Mallinckrodt, Inc. ("Mallinckrodt"). AIMCOR claims Mallinckrodt breached an indemnity provision in a stock purchase agreement between the parties which requires Mallinckrodt to defend and indemnify AIMCOR against certain liabilities. This action arises out of Mallinckrodt's refusal to defend AIMCOR against several personal injury lawsuits alleging asbestos-related injuries. The parties have cross motioned for summary judgment. For the reasons given below, the Court denies the parties' cross motions.

## BACKGROUND FACTS

On October 31, 1986, Industry Holdings, Inc. ("Industry") and International Mineral & Chemical Corporation ("IMC") entered into a Stock Purchase Agreement ("SPA"). (SPA, p.1.) Under the SPA, Industry agreed to purchase from IMC two wholly owned direct subsidiaries.[1](SPA, p. 1.) The Court will refer to the purchased subsidiaries collectively as the "Companies." At some point after Industry and IMC finalized the SPA, AIMCOR became a

---

[1] The subsidiaries were IMC Industry Group, Inc. and IMC Industry Group (Quartz) Inc.

1

successor in interest to Industry and Mallinckrodt became a successor in interest to IMC.[2] (See Def.'s LR 56.1(b)(3)(A) ¶¶3, 4.) As successors in interest, AIMCOR assumed Industry's rights and obligations under the SPA, and Mallincrodt assumed IMC's rights and obligations under the SPA (Id.) including the defense and indemnity obligations defined in Article VIII. (See SPA, pp. 61, 63, 64, 65, 66.)

Section 8.2 of the S.P.A. requires Mallinckrodt to defend AIMCOR against asserted Excluded Liabilities and indemnify AIMCOR from existing Excluded Liabilities. (Id. p. 61.) Section 8.4 requires AIMCOR to defend Mallinckrodt against asserted Permitted Liabilities and indemnify Mallinckrodt from existing Permitted Liabilities. (Id. p. 63.) The parties' conflicting interpretations of Excluded Liabilities are at the heart of this dispute.

Beginning in 1988, AIMCOR was sued, along with several other corporations, for injuries caused by silica-containing products. (Def.'s LR 56.1(b)(3)(A) ¶15.) Mallinckrodt agreed to defend AIMCOR against these lawsuits pursuant to the SPA. (Id.) Around the same time, AIMCOR was also sued for asbestos related injuries.[3] (Def.'s LR 56.1(b)(3)(A) ¶15.) Many of these asbestos lawsuits were filed in Indiana, North Dakota, Minnesota, and Texas. These lawsuits are the subject of this litigation.

The 20 Indiana complaints allege injury from exposure to asbestos or asbestos-containing

---

[2]The parties do not explain when or how AIMCOR and Mallinckrodt became successors in interest to Industry Holdings, Inc. and International Mineral and Chemical Corporation.

[3]There are also complaints alleging both asbestos and silica related injuries. However, these complaints are not the subject matter of the parties' cross motions.

2

products AIMCOR either manufactured, sold, and/or distributed. (Mallinckrodt Ex. 8, p. 1.)[4]
The complaints allege exposure "in powerhouses, ships, commercial establishments, paper mills, refineries, schools and other places" in Indiana "during the period of 1935 to the present ..." (Mallinckrodt Ex. 8, pp. 2-3.)

The North Dakota complaints allege injuries from exposure to asbestos or asbestos-containing products AIMCOR either mined, manufactured, processed, imported, converted, compounded, wholesaled, and/or retailed in North Dakota. (Def.'s LR 56.1(b)(3)(B) ¶13.) The complaints do not define asbestos or asbestos related products, but instead simply refer to "various asbestos-containing products," "certain asbestos and asbestos related materials," "harmful" asbestos material and "asbestos-related insulation materials." (See Def.'s LR 56.1(b)(3)(B) ¶14; Mallinckrodt Response Ex. B, p.6, ¶¶4, 6.) In addition, these complaints only describe the locations of exposure as "various locations" in North Dakota, and describe the dates of exposure as "all times relevant to this action." (Def.'s LR 56.1(b)(3)(B) ¶¶ 15, 16.)

The Minnesota and Texas complaints similarly name several defendants, including AIMCOR, and allege injuries from exposure to asbestos or asbestos-containing products from 1935 to the present. (Def.'s LR 56.1(a)(3) ¶34.)

It is undisputed that neither AIMCOR nor the Companies have ever produced or sold any asbestos-containing products. (Def.'s LR 56.1(b)(3)(A) ¶¶1, 8, 9, 13.) However, Mallinckrodt

---

[4]The complaints define asbestos, or asbestos containing materials as "all materials ... containing or including asbestos ... including but not limited to, insulation, talc, soapstone, building supplies, construction materials, fireproofing materials, friction products, brake linings, clutch facings, refractories, gaskets, packing, drywall boards, joint and/or caulking compounds, protective clothing, sprays, electrical wire, conduit and cable products, coated welding rods, etc., including raw asbestos fiber." (Mallinckrodt Ex. 8, p. 2.)

3

produced at least one asbestos containing product from 1966 to 1974. (Id. ¶¶3, 10.)

Mallincrodt refused to defend AIMCOR against the asbestos lawsuits, believing asbestos related injuries were outside the scope of its obligations under the SPA. (Def.'s LR 56.1(b)(3)(A) ¶15.) Mallinckrodt believes Excluded Liabilities, as defined in the SPA, are limited to liabilities arising out of the Companies' business activities. (Def.'s LR 56.1(b)(3)(B) ¶45.) And because the Companies never produced or sold any asbestos-containing product, Mallinckrodt was not obligated to defend AIMCOR against lawsuits alleging asbestos related injuries. (Id.)

Mallinckrodt first began denying AIMCOR's defense tenders in 1991. (Def.'s LR 56.1(b)(3)(A) ¶16.) At this time, Ken Burns was responsible for accepting or denying AIMCOR's tenders. (Id.) Russ Piraino took over this role after July 1996. (Id. ¶17.) Mallinckrodt also employed outside counsel Robert Haley and James Nyeste of Wildman, Harrold, Allen & Dixon to assist Burns and Piraino. (Id. ¶18.) Vincent Maloney was AIMCOR's attorney responsible for tendering complaints to Mallinckrodt. (Def.'s LR 56.1(b)(3)(B) ¶18.)

Both Burns and Piraino believed that asbestos cases were always outside the scope of the defense and indemnity provision, and that the fact that a complaint only alleged asbestos related injuries was a sufficient basis to reject a tender. (Def.'s LR 56.1 (b)(3)(A) ¶¶50, 51, 58, 59.) It is unclear whether Mallinckrodt considered any other factors when rejecting AIMCOR's tenders.[5]

---

[5]Nyeste testified that he gave reasons for rejecting AIMCOR's tenders to Maloney such as the years of exposure alleged bore no relation to the years Mallinckrodt made an asbestos product, or that the general and vague allegations in the complaint did not resemble any product Mallinckrodt made. (Ex. 8, Nyeste Dep. At 122:9-124:22). Burns and Piraino testified in their depositions that they may have considered other factors, however, they could not identify any specific factor with respect to any specific tender. (Def.'s LR 56.1 (b)(3)(A) ¶49.)

4

Consistent with Mallinckrodt's interpretation of Excluded Liabilities, Burns testified that he "doubted" Mallinckrodt investigated the asbestos tenders beyond reading the tendered complaints before rejecting them. (Id. ¶57.) Burns testified that Mallinckrodt would "apply to the tender everything [Mallinckrodt] knew about that litigation and also apply our own knowledge to what was in the complaint" before rejecting the tender. (AIMCOR Ex. 4, Burns Dep. 87:19-22.) Burns further testified that if a tendered complaint was from a jurisdiction where litigation was already pending and Mallinckrodt had local counsel present, Mallinckrodt would contact local counsel to get more information on the complaint. (Id. pp. 87-88.)

However, when the complaint was from a jurisdiction where there was no pending litigation, Mallinckrodt would rely on "what was in the pleading ... and ... [its] own knowledge of the business," to accept or reject the tender. (Id. pp. 88-89.) In cases when there was not enough information to determine whether Mallinckrodt had a duty to accept the tender, Mallinckrodt refused to accept because "there wasn't enough there to indicate that [Mallinkcrodt was] responsible." (Id. p. 89.)

Piraino testified that he never personally conducted any investigation into the asbestos tenders beyond reading the complaint before rejecting them. (Def.'s LR 56.1 (b)(3)(A) ¶62.) Piraino testified that Mallinckrodt would review the tendered complaints with outside counsel, and pose additional inquiries to AIMCOR when necessary to determine whether to accept or reject the tenders. (Ex. 3, Piraino Dep. at 105:24-107:12.) In response to the North Dakota tenders, Haley reviewed Mallinckrodt's sales records to determine if Mallinckrodt had sold any products in North Dakota. (Id. ¶64). However, Mallinckrodt's sales records for North Dakota were incomplete. (Def.'s LR 56.1(b)(3)(B) ¶70.)

AIMCOR filed its complaint April 16, 1999 alleging Mallinckrodt breached the SPA by refusing to defend AIMCOR against the asbestos lawsuits and sought to recover the legal expenses incurred in defending these cases. In response, Mallinckrodt filed a motion to dismiss or Judgment on the pleadings, which Magistrate Judge Schenkier denied on May 25, 2000. (102 F.Supp2d 934 (N.D. Ill. 2000).) Magistrate Judge Schenkier held that the SPA requires Mallincrodt to defend AIMCOR when AIMCOR tenders a complaint that on its face could give rise to an Excluded Liability. (102 F.Supp. 2d 934, 944.) However, he also held that Mallinckrodt can deny these tenders if it has a good faith basis for believing the complaints could not give rise to an Excluded Liability. (Id.) Magistrate Judge Schenkier explained Mallinckrodt may form a good faith basis for rejecting a tender by investigating the claim beyond the four corners of the complaint. (Id.)

The parties filed cross motions for summary judgment on July 1, 2002. The motions present the Court with two issues. The first issue is whether the tendered complaints, on their face, could possibly give rise to an Excluded Liability, and thus, trigger Mallinckrodt's obligation to defend AIMCOR. The second issue is, if the tendered complaints do assert an Excluded Liability, did Mallinckrodt have a good faith basis for refusing to defend AIMCOR against the asbestos lawsuits.

## DISCUSSION

Summary judgment is appropriate when the moving party's evidence establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *King v. Nat'l Human Resource Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court considering a motion for summary

judgment must draw all inferences from the record in the light most favorable to the non-moving party. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). The moving party is not entitled to summary judgment when a reasonable jury could return a verdict in favor of the non-moving party based on the evidence in the record. *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

**I. *Magistrate Judge Schenkier's Ruling***

The issue before Magistrate Judge Schenkier on Mallinckrodt's motion to dismiss was whether the mere allegations in the tendered complaints triggered Mallincrodt's obligation to defend AIMCOR under the SPA. (*Applied Industrial Materials Corp. v. Mallinckrodt, Inc.*, 102 F.Supp.2d 934, 939 (N.D. Ill. 2002).) In determining Mallinckrodt's obligations under the SPA, Magistrate Judge Schenkier relied on *Ervin v. Sears, Roebuck & Co.*, 127 Ill.App.3d 982 (Ill. App. 5th Dist. 1984), the only Illinois case to address a party's defense obligations under an indemnity provision in a purchasing agreement.

Magistrate Judge Schenkier decided that Ervin stands for the proposition that a party to a purchasing agreement cannot deny a defense tender without a good faith basis for doing so. *Id.* at 944. Therefore, "the [SPA] ... requires Mallinckrodt to defend ... AIMCOR against third-party complaints that on their face could give rise to an Excluded Liability, unless and until Mallinckrodt has a good faith basis for believing that the third-party claims could not give rise to a right of indemnification under the [SPA]." (*Id.* at 943.) Magistrate Judge Schenkier concluded that Mallinckrodt could investigate the tendered claims beyond the four corners of the complaint to justify its refusal to defend AIMCOR. *Id.* We agree.

7

## II. *Whether the Complaints Assert an Excluded Liability*

Mallinckrodt argues that the complaints, which allege asbestos only related injuries, do not facially assert an Excluded Liability by definition because these claims do not arise out of the Companies' business activities. In response, AIMCOR argues that Excluded Liabilities include liabilities beyond those arising from the Companies' business activities and encompass the tendered asbestos cases. Whether the tendered asbestos cases could give rise to an Excluded Liability turns on the definition of Excluded Liability.

Section 8.5(c) defines Permitted Liabilities. The relevant language reads:

The following liabilities of [Mallinckrodt] ... *with respect to the Businesses* are not Excluded Liabilities and constitute Permitted Liabilities:

(c) all liabilities ... for injury to or death of persons ... occurring after [June 30, 1986] (*excluding* any such liabilities which arose out of the sale and delivery by [Mallinckrodt] ... of any product on or prior to [June 30, 1986] ...) ....

Section 8.6 defines Excluded Liabilities. The relevant language reads:
The following liabilities of [Mallinckrodt] ... are not Permitted Liabilities, and constitute Excluded Liabilities:

(e) any liabilities for injury or death of persons ... which do not constitute Permitted Liabilities *described in Section 8.5(c)*.

(Emphasis added)

Mallinckrodt argues a third party claim does not assert an Excluded Liability under the plain language of Sections 8.5(c) and 8.6(e) unless it alleges injuries arising from the Companies' business activities. (See SPA, p. 9.) And because the tendered complaints allege injuries from exposure to asbestos, or asbestos containing materials, which the Companies never produced or sold, the tendered complaints do not assert an Excluded Liability, and therefore do not trigger its defense obligations under the SPA.

8

To support its position, Mallinckrodt points to the language of Sections 8.5(c) and 8.6(e). Mallinckrodt argues that Section 8.5(c) defines Permitted Liabilities, as Mallinckrodt's liabilities for injuries or death to persons arising out of the Companies' business activities that occur after June 30, 1986. Mallinckrodt then points out that 8.5(c) excludes from its definition of Permitted Liability "any such liabilities" arising out of the sale and delivery by Mallinckrodt of any product on or prior to June 30, 1986. Mallinckrodt argues that "any such liabilities" refers to liabilities for injuries and death to persons.

In sum, Mallinckrodt argues that Section 8.5(c), read as a whole, defines Permitted Liabilities, which run to AIMCOR, as Mallinckrodt's liabilities for injury or death to persons resulting from the Companies' business activities that occur after June 30, 1986. Excluded from that definition are liabilities for injury or death to persons resulting from the Companies' business activities that occur on or prior to June 30, 1986. Thus, Mallinckrodt argues that Section 8.5(c) liabilities must relate to the Companies' business activities. AIMCOR does not dispute this interpretation of Section 8.5(c).

Mallinckrodt then argues that the "with respect to the Businesses" language appearing in Section 8.5(c) in defining Permitted Liabilities should also be read into Section 8.6(e) when defining Excluded Liabilities. AIMCOR disputes this reading of the contract.

Section 8.6(e) does not include the "with respect to the Businesses" language that appears in Section 8.5(c). However, Section 8.6(e) defines Excluded Liabilities as Mallinckrodt's liabilities for injury or death to persons which do not constitute Permitted Liabilities as defined in 8.5(c). Mallinckrodt points out that Mallinckrodt's liabilities for injury or death of persons resulting from the Companies' business activities that occur on or prior to June 30, 1986, are not

9

Permitted Liabilities as described in Section 8.5(c). As a consequence, Mallinckrodt argues, although Section 8.6(e) does not expressly require that Excluded Liabilities arise from the Companies' business activities, this requirement should be read into Section 8.6(e) by reference to Section 8.5(c). And because the tendered complaints do not allege injuries arising from the Companies' business activities, Mallinckrodt argues they could not give rise to an Excluded Liability.[6]

However, AIMCOR presents a different interpretation of the two provisions, which is also supported by the contract's language. AIMCOR does not dispute Mallinckrodt's interpretation of 8.5(c). However, AIMCOR argues that while Permitted Liabilities must arise from the Companies' business activities, Excluded Liabilities, for which Mallinckrodt is liable, do not. AIMCOR argues that while Section 8.5(c) expressly states that Permitted Liabilities must relate to the Companies' business activities, Section 8.6(e) omits this language. AIMCOR argues the parties intentionally omitted this language in order to ensure that liabilities were appropriately designated. AIMCOR argues that it makes sense to limit AIMCOR's defense and indemnity obligations to only those third party claims alleging injuries relating to the Companies it purchased. Indeed, it is counterintuitive to think that AIMCOR would obligate itself to anything more.

AIMCOR then argues that it also makes sense to require Mallinckrodt to defend and

---

[6]Mallinckrodt argues in the alternative that if the Court accepts AIMCOR's interpretation of the SPA and the third party complaints do not have to allege injuries resulting from actions by the Businesses, that it still does not have a duty to defend the tendered complaints because the complaints are too vague. Mallinckrodt argues that the complaints fail to allege a specific product, or location of exposure, and the blanket allegations of asbestos, or asbestos related products are too vague to trigger Mallinckrodt's duty to defend.

indemnify AIMCOR against third party complaints arising from any of Mallinckrodt's business activity, regardless of whether it relates to the Companies.

We disagree with Malinckrodt's contention that the tendered complaints do not allege injuries arising from the Companies' business activities. By virtue of the fact that AIMCOR, a company that never sold any asbestos containing products, had some dealings with Mallinckrodt, a company that at one time produced and sold an asbestos containing product, AIMCOR has been named in over 60 lawsuits alleging asbestos related injuries. None of these lawsuits would have been filed against AIMCOR if it had not purchased IMC Industry Group, Inc. and IMC Industry Group (Quartz) Inc. The lawsuits assert that AIMCOR engaged in the manufacture and sale of asbestos products which resulted in personal injury. Because the parties have stipulated that AIMCOR has never done this and that Malinckrodt has, the reasonable inference is that the complaints, however vague their language, are referring to the activities of the two companies purchased by a AIM COR from Malinckrodt. Such allegations trigger the duty to defend. If the alleged basis for liability is determined to be some independent activity by AIMCOR which is unrelated to IMC Industry Group, Inc. and/or IMC Industry Group (Quartz) Inc., then, obviously, Malinckrodt would have no duty to defend. But that is not the case before us. If the asserted liability is based upon the alleged production and selling activities of the two companies purchased by AIMCOR, however mistaken such allegations may be, then the duty to defend remains. That such allegations are factually incorrect is a good defense to the lawsuits, it is not a basis for refusing to defend the lawsuits. AIMCOR has spent over $230,000 attempting to convince these personal injury plaintiffs that they in fact had the "wrong guy." AIMCOR argues that the parties anticipated this occurrence, and specifically drafted the defense and indemnity

provisions to ensure the appropriate party - Mallinckrodt - answered for these liabilities.

The allegedly incorrect factual assertions in the lawsuits upon which Mallinckrodt bases its argument that it has no duty to defend or indemnify are no different from any other factual allegations necessary to establish liability in any lawsuit. The logical extension of Mallinckrodt's argument is that if any lawsuit, alleging that the IMC companies are liable, is based upon an erroneous factual predicate, it (Mallinckrodt) need not defendant or indemnify. The problem, of course, is that it takes money to prove the lawsuit is based upon an erroneous factual predicate, and it is in order to avoid having to spend that money that parties contract to allocate the expense of defending lawsuits to one or the other. If in order to obtain the benefits of the contractual provision AIMCOR is first required to prove that the lawsuit is not actually frivolous, the promise to defend would be, if not worthless, certainly worth much less. We see no language in the contractual provisions that would require us, or even allow us, to infer such a limitation on Mallinckrodt's responsibilities. The obvious intent of the provisions was to protect AIMCOR from lawsuits which might follow the companies they purchased from Malinckrodt. AIMCOR did not wish to be stuck with the expense of defending lawsuits based upon alleged misconduct which took place prior to the time they purchased the companies. That is precisely what these lawsuits are. That the allegations are mistaken goes to the validity of lawsuits, not Malinckrodt'sa duty to defend against them. The contractual obligation to defend does not extend only to valid claims for which there is actual liability, it extends to those claims which allege liability based upon the sale of products, even if the allegations turn out to be incorrect. The obligation to actually indemnify will arise, of course, only if the allegations are actually proven to be true.

## CONCLUSION

For the reasons set forth above Applied Industrial Materials Corp.'s Motion for Summary Judgment Is GRANTED and Mallinckrodt's Cross Motion for Summary Judgment Is DENIED.

SO ORDERED:

3/28/03

ENTERED: /s/ Ronald A. Guzman
Ronald A. Guzman
United States Judge